UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

AVRAHAM LEVI,

        Plaintiff,                                       <u>MEMORANDUM AND ORDER</u>
                                                              10-cv-3980 (JG)(RLM)

    -against-

THE STATE OF NEW YORK,
SUPREME COURT COUNTY OF KINGS,
OFFICE OF COURT ADMINISTRATION,
JUDGE MICHAEL A. AMBROSIO,
Formally an Acting Supreme Court
Judge, individually and in his
Official capacity, and
SIGAL "SHAVIT" LEVI, individually,
Jointly and severally, and all others
Summarily situated,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S :

    AVRAHAM LEVI
        1865 McDonald Avenue
        Brooklyn, NY 11223
        Plaintiff, *Pro Se*

    ANDREW M. CUOMO
        Attorney General of the State of New York
        120 Broadway, 12th Floor
        New York, NY 10271
  By:  Charles F. Sanders
        Attorney for Defendants State of New York,
        Supreme Court, Kings County,
        Office of Court Administration, and
        Justice Michael A. Ambrosio

    SIGAL SHAVIT LEVI
        2117 East 14th Street
        Brooklyn, NY 11229
        Defendant, *Pro Se*

JOHN GLEESON, United States District Judge:

This action arises out of a divorce proceeding that was tried in the Supreme Court of Kings County between 2001 and 2005 and resulted in a decree of divorce issued by Justice Michael Ambrosio in favor of Sigal Shavit Levi ("Sigal Levi"). Plaintiff Avraham Levi ("Levi") brought suit under 42 U.S.C. § 1983 against the State of New York, the Supreme Court of Kings County (the "Supreme Court"), the Office of Court Administration (the "OCA"), Ambrosio (collectively, the "State defendants"), and Sigal Levi for various violations of the federal Constitution, and the defendants have moved to dismiss. For the reasons set forth below, the defendants' motions are granted.

BACKGROUND[1]

A. *Trial Before Judge Garson*

On October 21, 2001, Levi instituted divorce proceedings against his now-former wife, defendant Sigal Levi. At that time the parties had been married for 16 years and were the parents of five children then ranging between four and thirteen years of age: Hadar, Tamir, Tehila, Mattan, and Reie. *Levi v. Levi*, 2005 N.Y. Misc. LEXIS 3479, at *1 (N.Y. Sup. Ct. 2005) (hereinafter "*Levi I*"). Levi also owned a home in Brooklyn which served as the marital residence.[2] *Id.* at *15.

---

[1] The facts stated in this section are drawn from the official records of the divorce and criminal actions, of which I take judicial notice, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991), as well as the pleadings and their attachments.

[2] At the trial before Justice Ambrosio, Levi alleged that the marital residence was jointly owned by himself and his father, Yaacov Levi. Yaacov Levi's rights in the property were fully adjudicated by Justice Ambrosio, and are not at issue here. *See Levi I* at 16-17; *Levi v. Levi*, No. 29824-2003 (N.Y. Sup. Ct. 2005) (Order dated June 13, 2005); *id.* (Amended Order dated Feb. 4, 2005).

2

As a result of a nine-day trial before Justice Gerald Garson, with Levi's consent, Sigal Levi was granted a divorce on the ground of constructive abandonment. *Levi I* at 3.[3] It is unclear whether any final judgment as to custody or division of marital property was entered. During the course of the trial, Sigal Levi petitioned the criminal court for an order of protection requiring Levi to stay away from and not communicate with her, which was granted.[4] *People v. Levi*, 55 A.D.3d 625, 625 (N.Y App. Div. 2008).

B. *The Bribery Case*

Post-trial briefing in Levi's divorce action was halted when Justice Garson was implicated in a bribery scandal. Garson was subsequently convicted of receiving bribes from litigants in return for favorable verdicts in their disputes -- including matrimonial disputes. Once Garson's activities were brought to light, investigators discovered that Levi was one of the individuals who had bribed Garson. Levi entered into a cooperation agreement with the Kings County District Attorney's Office regarding the bribery scandal, *Levi I* at 2-3, and on June 21, 2004, he pled guilty to conspiracy charges arising from a $10,000 bribe he paid to Garson. *See Levi v. Levi*, 46 A.D.3d 520, 521 (N.Y. App. Div. 2007) ("*Levi II*"). Levi was sentenced to a three-month term of incarceration and 150 hours of community service. (*See* Sanders Aff., Exh. A.) The divorce case that was still pending before Garson was declared a mistrial. *Levi II* at 521.

C. *Retrial Before Justice Ambrosio*

After an extended delay, the divorce case between Levi and Sigal Levi resumed in a trial before Justice Ambrosio. The new trial lasted 11 days, and dealt only with custody, child

---

[3] The behavior by Levi toward his ex-wife and children that precipitated the divorce is extensively chronicled in *Levi I*, and will not be repeated here.

[4] On August 13, 2004, Levi was convicted of two counts of criminal contempt for violating this order. The conviction was affirmed by the Appellate Division, Second Department. *People v. Levi*, 55 A.D.3d 625 (N.Y. App. Div. 2008).

support, maintenance, and equitable distribution of the marital assets and debts. *Levi I* at 2. During the course of the trial, Ambrosio conducted a separate inquest as to the parties' marital status and granted Sigal Levi a judgment of divorce based on constructive abandonment. *Id.* at 3.

By order dated November 28, 2005, Justice Ambrosio awarded the entire marital residence to Sigal Levi. His decision was based in part on Levi's "egregious" behavior in bribing Justice Garson, a basis that the Appellate Division held to be proper. *Id.* at 23-24; *see Levi II at* 521-22. He divided the remainder of the marital assets and debts equally between the two parties, *Levi I* at 26-27, but declined to grant maintenance to either party, *id.* at 27. He gave full custody of Reie and Mattan to Levi, and of Tehila, Tamir, and Hadar to Sigal Levi. *Id.* at 12-13.

D.  *The Current Action*

The current action consists of a series of alleged violations of Levi's civil rights. He claims that New York State has "allowed laws to exist that discriminate against men in the court system, when dealing with family matters. Their procedures, policies and practices favor women more so than men." (Compl. ¶ 7.) He makes similar allegations against the Supreme Court and the OCA, also alleging that they have failed to "train and properly supervise their agents in the fairness of equal treatment of men under the law." (*Id.* ¶¶ 8-9.) He alleges that Justice Ambrosio has denied Levi due process of law, has "shown favoritism and extreme prejudice toward plaintiff, and has inputted his own option [sic] in place of real facts . . . and has altered the courtroom transcripts." (*Id.* ¶ 10.) Finally, he alleges that Sigal Levi has "used the system to entitle herself to property not her own, and has never been required to submit financials or verify her income, and used perjury to get court order's [sic] of protection." (*Id.*

4

¶ 11.) He demands compensatory and punitive damages, as well as attorney's fees and costs. (*Id.* ¶¶ A, B.)

In his brief in opposition to the motion,[5] Levi makes additional allegations regarding his father, Yaacov Levi, and the disposition of the marital residence that Levi allegedly co-owned with his father. Levi asserts that Sigal Levi caused her sister, Lilach Shavit, an Israeli attorney, to serve Yaacov Levi with "court papers that he had to appear in court." (Opp. ¶¶ 2-4.) According to Levi, Yaacov Levi was in a "mentally dilapidated state, unable to understand what was going on" (*id.* ¶ 2), and thus required a guardian (*id.* ¶ 18).

Levi further states in his opposition brief that Justice Ambrosio refused to receive evidence proving that Yaacov Levi was a part-owner in the marital residence. (*Id.* ¶1.) He accuses Ambrosio of unfair or illegal actions, including Ambrosio's alleged disregard for Yaacov Levi's mentally compromised status.

## DISCUSSION

A. *Immunity*

1. *State of New York*

Levi alleges under Section 1983 that the State of New York has promulgated laws that "discriminate against men in the court system, when dealing with family matters." (Compl. ¶ 7.) He further alleges that the state's "procedures, policies and practices favor women more so than men" (*id.*), and that the state has "de facto policies, practices, customs and usages of failing properly to train, screen, supervise and discipline agents, employees, and court personal [sic], and failing to inform the individual defendants and their supervisors of their need to train, screen,

---

[5] Because Levi is proceeding *pro se* and I must therefore his pleadings liberally, I construe his "opposition" to supplement the allegations in his complaint.

5

and supervise or discipline said defendants" (*id.* ¶ 15). He demands compensatory and punitive damages for the state's "unconstitutional conduct." (*Id.*)

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Amendment has been held to confer immunity that is broader than the text would suggest: the doctrine of sovereign immunity provides that no state may be sued for damages, even by its own citizens, without its consent. *See Hans v. Louisiana*, 134 U.S.1, 13 (1890); *Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). Though New York State has waived sovereign immunity in some areas, it has not consented to suit under Section 1983. *See Mamot v. Board of Regents*, 367 Fed. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." (citations omitted)). Accordingly, the State of New York is immune from suit for damages under Section 1983. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002).

Although the Eleventh Amendment does not bar suits against state employees in their official capacity for "prospective injunctive relief to prevent a continuing violation of federal law," *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)), Levi does not (and cannot) allege such an ongoing violation. Instead, Levi has asked solely for "compensatory damages and punitive damages . . . [and] an award of attorneys' fees and costs and disbursements" (Compl. ¶¶ A, B), which are barred by the Eleventh Amendment. Accordingly, Levi's claims against the State of New York are dismissed.

2. *Judicial Entities*

Levi has also brought suit against the Supreme Court and the OCA. Both the Supreme Court and the OCA are agencies or divisions of New York State, and thus are not themselves proper defendants to this action. The Supreme Court is not a suable entity, but is "a part of the judicial arm of the State of New York." *Zuckerman v. App. Div., 2d Dept., Sup. Ct. of N.Y.*, 421 F.2d 625, 626 (2d Cir. 1970); *see Gollump v. Spitzer*, 568 F.3d 355, 367 (2d Cir. 2009) ("[T]he New York State Unified Court System is immune from suit."). Similarly, the OCA, as "an agency of the State of New York," *Winokur v. Office of Ct. Admin.*, 190 F. Supp. 2d 444, 446, (E.D.N.Y. 2002), is not a distinct entity amenable to suit, but is an "integral part of [the] state." *Id.* at 450; *see Anderson v. State of N.Y., Office of Ct. Admin. of Unif. Ct. Sys.*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009) (holding that the OCA is a "governmental entity" and therefore immune to suit).

State agencies and similar divisions of the state are "entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." *Santiago v. N.Y. State Dept. of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991); *see Gollump*, 568 F.3d at 366-67. This situation typically arises where, as here, "a money judgment against a state instrumentality or official would be enforceable against the State." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Levi's suit against the Supreme Court and the OCA is barred in its entirety by the Eleventh Amendment, as it is for the State itself. The claims against the Supreme Court and the OCA are therefore dismissed.

3. *Justice Ambrosio*

Levi has brought suit against Justice Ambrosio in both his individual and official capacities for "den[ying] due process of law, show[ing] favoritism and extreme prejudice towards plaintiff, and [inputting] his own option [sic] in the place of real facts, while on the bench, and [altering] the courtroom transcripts." (Compl. ¶ 10.) Levi's claims against Ambrosio are barred for two reasons.

First, insofar as Levi has sued Justice Ambrosio in his official capacity, Ambrosio is immune from suit: a state official acting in his official capacity receives the protection of the state's own sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (a claim against a state official in his official capacity is considered to be one against the state itself, and is thus barred by sovereign immunity); *Hafer v. Melo*, 502 U.S. 21, 25 ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").

Second, Justice Ambrosio is protected by absolute judicial immunity from damages liability for any acts performed in his judicial capacity.[6] *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). There can be no question that Ambrosio's challenged actions were performed in his judicial capacity: the actions included adjudicating a divorce, dividing marital property, providing an attorney to a *pro se* party, and determining that, to avoid "giv[ing] this nightmare to anyone else," he would retain jurisdiction over Levi's divorce case when he was transferred to family court. (Opp. ¶¶ 10, 11, 13.) Ambrosio's power to undertake all of these actions derives from his capacity as a Justice of the New York State Supreme Court. Levi alleges, as disgruntled former litigants are wont to do, that Ambrosio acted with improper motivations, but even

---

[6] Absolute judicial immunity extends to Justice Ambrosio in both his professional and individual capacity. *See Bliven*, 579 F.3d at 209; *Abrahams v. App. Div. of Sup. Ct.*, 473 F. Supp. 2d 550, 557 (S.D.N.Y. 2007) (judicial immunity applied to judges in their individual capacities so long as judges did not act "in clear absence of jurisdiction").

"allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Levi's claims against Ambrosio are therefore dismissed.

B.  *Claims Against Sigal Levi*

   1.  *Motion to Dismiss Standard*

In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating Levi's claim, I construe the complaint liberally, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving parties, and bearing in mind that a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly* . . . we remain obligated to construe a *pro se* complaint liberally." (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Although the complaint must be supported by more than "mere conclusory statements," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), it need not provide "detailed factual allegations." *Twombly*, 550 U.S. at 555.

   2.  *Section 1983 Claims*

Levi brings several different claims against Sigal Levi under Section 1983 in Counts One, Three, and Four.[7] However, his allegations fail to state a claim. Section 1983 was intended to establish "a federal cause of action for damages against state and local officials who have caused individuals to suffer a constitutional deprivation, and was designed to protect them

---

[7] Although Counts Three and Four are not explicitly brought under Section 1983, Section 1983 is the proper form of redressing alleged violations of constitutional rights. *See, e.g.*, *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 130 (noting that "the harm occasioned by [violating an accused's constitutional right to a fair trial] is redressable in an action for damages under 42 U.S.C. § 1983"). Moreover, Levi invokes only Section 1983 in his introduction and jurisdictional sections. (*See* Compl. ¶¶ 1-2.)

against a misuse of power made possible only because the wrongdoer is clothed with the authority of state law." *Duchesne v. Sugarman*, 566 F.2d 817, 829 (2d Cir. 1977) (punctuation and citation omitted). Therefore, it is "axiomatic that . . . § 1983 . . . appl[ies] only to state actors." *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996). Because Sigal Levi is not a state actor, Levi may not bring a Section 1983 action against her. Therefore all such claims against her are dismissed.

### 3. *Tortious Abuse of Process*

Reading the complaint liberally, and particularly in light of Levi's opposition brief and oral argument, I construe it to allege a claim of abuse of process against Sigal Levi.[8] The common law tort of abuse of process has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). Accepting Levi's allegations as true, I conclude that the actions Levi attributes to his ex-wife cannot support an abuse of process claim.

Specifically, Levi has not alleged facts sufficient to establish that Sigal Levi had the intent to do harm without excuse or justification, or that she used the process in a perverted manner to obtain a collateral objective. At the time of the allegedly tortious conduct, Sigal Levi was embroiled in a legal dispute over the ownership of her primary residence. The action Levi complains about -- effecting personal service on Yaacov Levi via a licensed Israeli attorney (Opp. ¶ 2-4) -- functioned to aid the court in its division of the marital property. *See Panish v. Steinberg*, 32 A.D.3d 383, 383 (N.Y. App. Div. 2006) (there was no abuse of process where "[t]he plaintiff failed to allege any actual misuse of the [process] to obtain an end outside its

---

[8] Although no federal claims remain in this litigation, in the interests of judicial efficiency I decide this claim under my supplemental jurisdiction because the abuse of process claim was pled in conjunction with and arises out of the same facts as the federal counts. *See Siler v. Louisville & Nashville R.R.*, 213 U.S. 175 (1909).

10

proper scope"). Levi has not alleged any "ulterior purpose" that motivated Sigal Levi to serve process on her then-father-in-law. *See Piep v. Baron*, 506 N.Y.S.2d 838, 840 ("It is not enough to show that plaintiffs had an ulterior motive in using the legal process of the court, he would have to further show that plaintiffs used the process for a purpose for which it was not intended. The act must be such as to constitute a perversion of the process *so as to deprive the process of its proper function*. . . ." (emphasis added)). On the facts and arguments presented to me in the complaint and the opposition, I cannot conclude that Levi has plausibly alleged that Sigal Levi committed the tort of abuse of process. Accordingly, that claim is dismissed as well.

## CONCLUSION

The motions to dismiss are granted and the complaint is dismissed with prejudice as to all defendants. The Clerk is respectfully directed to enter judgment accordingly.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: December 22, 2010
      Brooklyn, New York